United States District Court
Middle District of Florida
Jacksonville Division

**JEANNA CANNAROZZO, NICOLE LOPEZ, AND AMY RICE, ON BEHALF OF THE NEMOURS FOUNDATION SECTION 403(B) PLAN, HIMSELF, AND ALL OTHERS SIMILARLY SITUATED,**

    Plaintiffs,
v.                                                                                  NO. 3:23-cv-136-BJD-LLL

**THE NEMOURS FOUNDATION,**

    Defendant.
_____

## Report and Recommendation

Before the Court are Defendant The Nemours Foundation's Motion to Dismiss and Incorporated Memorandum of Law, doc. 28; defendant's Declaration of Michael E. Holzapfel in Support of Motion to Dismiss, doc. 30; Plaintiffs Jenna Cannarozzo, Nicole Lopez, and Amy Rice (collectively Plaintiffs') Response in Opposition to Defendant's Motion to Dismiss the Complaint, doc. 31; Defendant's reply, doc. 35; and Plaintiffs' sur-reply, doc. 37. This motion has been referred to me for the issuance of a report and recommendation regarding an appropriate resolution. For the reasons discussed below, I respectfully recommend that defendant's motion to dismiss be denied.

## Background

Plaintiffs initiated this action in February 2023 by filing their class action complaint against defendant, doc.1; they amended their complaint in June 2024. Doc. 21. Plaintiffs are former Nemours employees and participants in The Nemours Foundation Section 403(b) Plan (the Plan). *Id*. ¶ 24-26. The Plan is a "defined contribution plan" covered under the Employee Retirement Income Security Act of 1974 (ERISA), where participants' benefits are determined by the value of contributions made to their individual account. *See* 29 U.S.C. § 1002(34); doc. 21 ¶¶ 9, 31.

Defendants manage the Plan and use recordkeepers such as Transamerica, who charge fees for their services.[1] *Id.* ¶¶ 9-15, 56-58. These fees are calculated as an expense ratio, which is a percentage of fund assets under management. *Id.* ¶ 123. The recordkeeper provides services such as transaction processing, government reporting, and consulting services regarding investment selection. *Id.* ¶¶ 46, 90. The record keepers' fee may be fixed or asset-based, where the recordkeeper takes a percentage of total assets in the Plan, deducted ratably from participant accounts. *Id.* ¶¶ 50, 51, 62. The recordkeepers may also receive "float" revenue. *Id.* ¶ 59. When money is deposited into or withdrawn from a participant's individual account, the money may first pass through an account maintained by the recordkeeper. *Id.* The recordkeeper

---

[1] Plaintiffs allege that Transamerica is the Plan's "core recordkeeper" but the Plan uses other recordkeepers including VALIC, Newport Trust Company, and Fidelity Investment Institutional. Doc. 21 ¶¶ 56, 56 n.2.

may retain interest, or "float," on a portion of that money for the time it remains in the recordkeeper's clearing account. *Id.*

In their two-count complaint, plaintiffs allege that (1) defendant breached its fiduciary duty of prudence, and (2) failed to adequately monitor other fiduciaries and service providers. *Id.* ¶¶ 132-43. In count one, plaintiffs allege that the Plan's fiduciaries caused participants to pay excessive recordkeeping fees to Transamerica. *Id.* ¶¶ 132-38. In count two, plaintiffs allege that the Plan's fiduciaries failed to adequately monitor its service providers. *Id.* ¶¶ 139-43.

After plaintiffs filed their initial complaint in February 2023, the Court stayed the case for plaintiffs to exhaust their administrative remedies. Doc. 13. In May 2024, the Court lifted the stay and the litigation recommenced with plaintiffs' first amended complaint (FAC). Docs. 20, 21. In August 2024, defendant responded to the FAC with a motion to dismiss, arguing that the FAC fails to state a claim upon which relief can be granted. Doc. 28. Plaintiffs responded, doc. 31, defendant replied, doc. 35, and plaintiffs filed a sur-reply, doc. 37. The motion to dismiss is now ripe for review.

## Authority

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has explained this requires that "a complaint . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility

3

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding a Rule 12(b)(6) motion, a district court should construe the complaint broadly and view the allegations in the light most favorable to the plaintiff. *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal citation and quotation omitted). The Court must view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994).

Further, when ruling on a motion to dismiss, "[a] court is generally limited to reviewing what is within the four corners of the complaint," and the attachments which are undisputed and central to the claim. *St. Georges v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). The Court may also consider documents central to a claim whose authenticity is not in dispute but must exercise caution when doing so. *See Tellabs, Inc. v. Makar Issues & Rights, Ltd.*, 551 U.S. 308 (2007); *see also* Fed. R. Evid. 201. "In sum, a court must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff." *Lopez*

4

*v. Embry-Riddle Aeronautical University, Inc.*, No. 6:22-cv-1580-PGB-LHP, 2023 WL 7129858, *11 (M.D. Fla. July 12, 2023). [2]

## Analysis

Under ERISA, a plan fiduciary is required to meet a standard of "prudence" in administering the participant's retirement assets in a defined contribution plan. 29 U.S.C. § 1104(a)(1)(B) (requiring fiduciaries to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[]").

"An ERISA fiduciary's duty is derived from the common law of trusts." *Tibble v. Edison Int'l*, 575 U.S. 523, 528 (2015). "A trustee has a continuing duty to monitor . . . investments and remove imprudent ones. This continuing duty exists separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." *Id.* (internal citations and quotation marks omitted). This monitoring "is to be done in a manner that is reasonable and appropriate to the particular investments, courses of action, and strategies involved." *Id.* (internal citations and quotation marks omitted). Under ERISA, a plan participant or beneficiary may sue plan fiduciaries for breach of fiduciary duties. 29 U.S.C. § 1132(a)(2).

---

[2] The Court acknowledges and considers that "[u]npublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) (citation omitted).

## I. Declaration of Michael E. Holzapfel

As an initial matter, the parties dispute whether the Court can properly consider the declaration of Michael E. Holzapfel, doc. 30, along with 23 exhibits attached to the declaration, which are filed in support of the defendant's motion to dismiss.[3] As observed above, at this stage of the proceedings, the Court limits its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. *See* Fed. R. Civ. P. 10(c); *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The incorporation by reference doctrine permits courts to consider documents attached to a motion to dismiss without converting the motion into one for summary judgment, but only if the attached documents are undisputed and central to plaintiff's claim. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Defendant uses portions of the declaration to refute allegations made in the FAC, maintaining that the affidavit, and the 490 pages of information attached to the affidavit, are subject to judicial notice. Doc. 35 at 5. Plaintiffs object to the evidence being considered at this juncture, arguing that defendant is "attempting to freight the record with cherry-picked materials it finds helpful." Doc. 31 at 13.

---

[3] Included as exhibits to the declaration are excerpts from the Plan for the years 2017-2022; participant level fee disclosures for the years 2017- 2021; fund prospectuses; the *Moitoso* stipulation; recordkeeping contracts; quarterly account statements; and a letter from defendant addressed to plaintiff's counsel. *See* doc. 30 at 2-5 and corresponding exhibits docs. 30-1–30-23.

6

Courts may take judicial notice of documents when the facts therein are not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Upon review of the affidavit and supporting documents, it does not appear appropriate for the Court to consider them at this time. Defendant uses the affidavit and attachments to dispute and refute the facts alleged in the complaint. Many of these documents are the type of evidence that are used in motions for summary judgment or submitted at trial. Although these documents may hold relevance at a later stage of the proceeding, and even resolve genuine issues of material fact, a motion to dismiss is not the juncture to settle such a dispute. *See Huang v. TriNet HR III, Inc.*, No. 8:20-cv-2293-VMC-TGW, 2022 WL 93571, *4-5 (M.D. Fla. January 10, 2022) (declining to take judicial notice of administrative record on a motion to dismiss in an ERISA case); *Lopez, Inc.*, 2023 WL 7129858 at *11 (declining to take judicial notice of exhibits to a motion to dismiss in an ERISA case); *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997) ("the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court"). Thus, I will only consider the exhibits specifically referenced in the FAC.

## II. Plaintiffs' FAC states a claim under 12(b)(6).

### A. Breach of Fiduciary Duty of Prudence

Moving to the merits, I find that plaintiffs' amended complaint states a plausible claim for relief and recommend that defendant's motion to dismiss be denied. I first consider defendant's argument that Count I fails to state a claim for breach of ERISA's duty of prudence. Doc. 28 at 16-19. The FAC alleges the Plan's recordkeeper receives compensation via float for services provided to the Plan. Doc. 21 ¶ 58-62. For the year ending in 2022, plaintiffs allege that more than $171 million was transferred into or out of the Plan. *Id.* ¶ 60. This money sits in the recordkeeper's clearing account for an average of 2-3 days (although it can be longer) whenever this type of transfer occurs. *Id.* ¶ 59, 61. Under the terms of the relationship, the recordkeeper is permitted to keep the investment returns or any interest earned on this money while the money is in its account. *Id* ¶ 59.

Plaintiffs allege that defendant "selected and retained investment options in the Plan despite the high cost of the funds in relation to other comparable investments." *Id.* ¶ 135. Further, they allege that defendants failed to "investigate the availability of lower-cost share classes of certain mutual funds in the Plan and failed to act within a reasonable time to remove funds that should have been replaced with lower-cost share class funds." *Id.* ¶ 136. Thus, if the recordkeeper earned 1% on $171 million then, it is alleged, it would have received more than $1 million in 2022 alone from float compensation. *Id.* ¶ 60. Plaintiffs allege defendant breached its ERISA fiduciary duty

8

of prudence by allowing the recordkeeper to receive millions in compensation without attempting to negotiate, account for, or limit that compensation. *Id.* ¶ 60, 61.

Defendants move to dismiss the FAC, alleging that (1) the *Moitoso* stipulation is not a meaningful benchmark to establish the reasonableness of Transamerica's fee; (2) similarly, the comparator plans are not meaningful benchmarks; (3) plaintiffs' claim that revenue sharing lead to hidden fees is implausible; and (4) the absence of a request for proposal (RFP)[4] does not, without more, create a plausible inference that Plan fiduciaries acted imprudently. Doc. 28 at 16-24.

Benchmarking refers to other examples of fee structures that plaintiffs use as comparisons to help establish that the fees charged to Transamerica were unreasonable. *See* doc. 21 ¶ 98. The *Moitoso* stipulation is one such example. In *Moitoso et al v. FMR, et al.,* 451 F.Supp.3d 189, 214 (D. Mass. 2020), the "parties [] stipulated that if Fidelity were a third party negotiating this fee structure at arms-length, the value of services would range from $14-$21 per person per year over the class period, and that the recordkeeping services provided by Fidelity to this Plan are not more valuable than those received by other plans of over $1,000,000,000 in assets where Fidelity is the recordkeeper." Doc. 21 ¶ 100. Plaintiffs use this stipulation as a benchmark to compare the fees charged to Transamerica. Doc. 21 ¶ 102 ("The key takeaway from

---

[4] Plaintiffs allege that defendants should have conducted RFPs at reasonable intervals to monitor recordkeeping costs. Doc. 21 ¶ 69 ("an RFP should happen at least every three to five years as a matter of course, and more frequently if a plan experiences an increase in recordkeeping costs or fee benchmarking reveals the recordkeeper's compensation to exceed levels found in other, similar plans.").

9

this stipulation by Fidelity is simple. Fidelity admitted the value of similar services ranged from between $14.00 to $17.00 per participant annually. Thus, for Nemours to permit Transamerica to charge its Plan more than $97.00 per participant annually in direct compensation alone is both imprudent and a violation of its fiduciary duty.").

In response, plaintiffs claim (1) that defendant's position turns on disputed facts and (2) they have plausibly alleged claims for breach of ERISA's duty of prudence and failure to monitor. Doc. 31 at 12-21. They rely upon three cases in support of their arguments: *Hughes v. Northwestern Univ.*, 595 U.S. 170 (2022); *Huang v. TriNet HR III, Inc.*, 2022 WL 93571; and *Lopez v. Embry-Riddle Aeronautical University, Inc.*, 2023 WL 7129858. *See generally* doc. 31. Collectively, these cases reject the arguments defendant raises in support of its motion to dismiss.

In *Hughes*, a case decided by the Supreme Court in 2022, the complaint—filed by participants in defendant's retirement and saving plans—alleged that defendant violated its ERISA duty of prudence by "offering needlessly expensive investment options and paying excessive recordkeeping fees . . . when materially identical lower priced institutional-class mutual funds were available." 595 U.S. at 172, 174-75. The District Court and Court of Appeals dismissed the complaint because, in their view, defendants provided an adequate array of fund choices, including the low-cost index funds that plaintiffs were asking for. *Id.* at 176.

The Supreme Court vacated and remanded, holding that "even in a defined-contribution plan where participants choose their investments, plan fiduciaries are required to conduct their own independent evaluation to determine which investments

10

may be prudently included in the plan's menu of options." *Id.* "If the fiduciaries fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty." *Id.* The Court further held that "[b]ecause the content of the duty of prudence turns on the circumstances . . . prevailing at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." *Id.* at 177. (internal quotations and citations omitted) (citing *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)).

Similarly in *Huang*, a case from the Middle District of Florida decided in 2022, the Court considered a motion to dismiss the complaint, which alleged—among other things—a breach of fiduciary duty of prudence under ERISA. 2022 WL 93571, at *1-2. Defendants argued the complaint should be dismissed for several reasons, including that plaintiffs' "inaccurate and inapt fee comparisons do not permit an inference of imprudence," the complaint's "hindsight performance allegations do not permit an inference of imprudence," and plaintiffs' allegation that the plan's fiduciaries failed to monitor recordkeeping fees was not plausible. *Id.* at *5 (internal quotations omitted).

In denying the defendant's motion to dismiss, the Court reasoned that although defendants argued plaintiffs' "claims [were] factually incorrect or rely on inapt comparators and that it complied with all of its statutory obligations under ERISA[,]" "'there may well be lawful reasons appellees chose the challenged investment options[.]'" *Id.* at *8 (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009)). Significantly, the Court held that such factual disputes were better resolved

11

"at a later stage of the litigation." *Id.* at \*8-9 (citing *Santiago v. Univ. of Miami*, No. 1:20-CV-21784, 2021 WL 1173164, at \*4 (S.D. Fla. Mar. 1, 2021), *report and recommendation adopted*, No. 1:20-CV-21784, 2021 WL 1165441 (S.D. Fla. Mar. 26, 2021) (noting the "fact-intensive inquiries" necessary to resolve the parties' dispute around recordkeeping fees and refusing to take up such a dispute on a motion to dismiss)).[5]

In *Lopez*, another Middle District of Florida case, the Court again considered a motion to dismiss an ERISA complaint, which, in part, alleged that defendant failed to fulfill its fiduciary duty by wrongfully choosing poorly performing investments and inappropriate high-cost mutual fund share classes, causing the plan to pay "unreasonably and needlessly excessive fees for certain services despite its ability to avoid doing so." 2023 WL 7129858, at \*2. Citing to *Huang* and finding it instructive, the Court denied the motion to dismiss. *Id.* at \*11, 13. In doing so, the Court noted that plaintiffs raised "substantially similar" arguments as in *Huang* and ultimately concluded that the issues raised in defendant's arguments required discovery to resolve, and plaintiff—at this stage of the proceedings—had plausibly alleged a claim. *Id.* at \*8-12.[6]

---

[5] The Court notes that the cited order in *Huang* was entered before the Supreme Court issued its opinion in *Hughes*.

[6] In defendant's reply, it argues that *Huang* and *Lopez* are not persuasive because *Huang* relied upon *Braden*, 588 F.3d 585, which was decided before *Hughes*. Doc. 35 at 3-4. Defendant notes that since *Braden*, the Eight Circuit has adopted the "meaningful benchmark" standard and cites subsequent cases. *Id.* Thus, defendant's argument goes, the Court should now decline to follow *Lopez* and *Huang* in light of both *Hughes* and intervening Eight Circuit precedent.

Upon review, I find *Hughes, Huang,* and *Lopez* instructive to the motion before this Court. The arguments raised in *Huang* and *Lopez* are substantially similar to the arguments raised here, including defendant's argument that the *Moitoso* stipulation and comparator plans are not meaningful benchmarks, and that plaintiffs' allegations are implausible. In support, defendant cites voluminous records attached as exhibits to the declaration, doc. 30, and arguments that turn on questions of fact. *See* doc. 28 at 16-29 ("the estimated fees at the heart of those comparisons are skewed and mismatched[,]" p. 17; "Plaintiffs improperly estimated the Plan's fees and the fees for the Comparator Plans[,]" p. 18; "Plaintiffs' float theory is also entirely speculative . . . . Plaintiffs then take a pure guess that Transamerica must have earned at least one percent interest on all $171 million and 'pocketed' $1.71 million in 2022 from float alone[,]" p. 19; "the FAC's misleading, apples-to-oranges comparisons are not meaningful benchmarks[,]" p. 20; "Documents provided to Plaintiffs during the administrative claims review – but ignored in the FAC – confirm that revenue share collected from the Plan's investments was used to pay the Plan's recordkeeping fee." p. 26).

Issues such as whether plaintiff's claims are speculative or misleading turn on questions of fact that are better resolved with the benefit of discovery. *See Lopez,* 2023

---

But this argument misstates the impact of *Hughes*. In *Hughes,* the Supreme Court clearly articulated the pleading standard for ERISA cases, which is met when a plaintiff has "plausibly alleged a violation of the duty of prudence as articulated in *Tibble*," while also applying the pleading standards discussed in *Ashcroft,* 556 U.S. 662, and *Twombly,* 550 U.S. 544. *Hughes,* 595 U.S. at 177. In *Tibble*, the Court held that a plaintiff "may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." 575 U.S. at 530. Although issued before *Hughes*, I find the reasoning of *Huang* is not inconsistent with that of *Hughes*.

13

WL 7129858, at *10 ("The parties should engage in discovery to resolve these fact-intensive questions."); *Kruger v. Novant Health, Inc.*, 131 F.Supp.3d 470, 479 (M.D.N.C. 2015) ("While Defendants claim that Plaintiffs have not alleged facts regarding why the amount of the recordkeeping fees are excessive, the services provided, or how the fees charged to the Plan were excessive in light of those services, this court finds that those are the types of facts warranting discovery, and, therefore, dismissal at this stage is not appropriate."); *Cassel v. Vanderbilt University*, 285 F.Supp.3d 1056, 1064 (M.D. Tenn. 2018) ("The question whether it was imprudent to pay a particular amount of record-keeping fees generally involves questions of fact that cannot be resolved on a motion to dismiss."); *Santiago*, 2021 WL 1173164, at *4 (noting the "fact-intensive inquiry" required to resolve the parties' dispute around recordkeeping fees and refusing to take up such a dispute on a motion to dismiss). The same logic applies to the question of whether the benchmarks alleged in the FAC are meaningful comparisons. *See Blackmon v. Zachary Holdings, Inc.*, no. 5:20-CV-988-DAE, 2021 WL 2190907, at *5 (W.D. Texas April 22, 2021) ("determination of the appropriate benchmark for a fund is not properly resolved at the motion to dismiss stage.").

Further, Supreme Court precedent requires a context-specific analysis for fiduciary duty claims arising under ERISA. *See Hughes,* 595 U.S. at 177 ("Because the content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts, § 1104(a)(1)(B), the appropriate inquiry will necessarily be context specific.") (quoting *Fifth Third Bancorp*, 573 U.S. at 425). A motion to dismiss, where the Court must assume the allegations as true without the context of discovery, is not

14

the appropriate stage to undertake this context-specific analysis. In line with the above authorities, I find that defendant's arguments to dismiss Count I are not persuasive, and I recommend the motion to dismiss on this ground be denied.[7]

*B. Failure to Adequately Monitor*

Similarly, defendant's arguments to dismiss plaintiff's failure to monitor claim cannot succeed. The question before the Court at this stage of the proceeding, with respect to Count II, is whether plaintiffs have plausibly alleged that defendant failed to monitor other fiduciaries of the Plan. As stated above, under ERISA, a fiduciary is required to conduct a regular review of its investments, thus, "[a] plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Tibble,* 575 U.S. at 530; *Hughes,* 595 U.S. at 175; 29 U.S.C.A. § 1104(a)(1)(B).

In the FAC, plaintiffs allege that defendant "breached its fiduciary duty of prudence by allowing Transamerica to receive compensation from Plan participants without tracking, monitoring, or negotiating the compensation Transamerica collects from interest on participant money as to the float from the Plan . . . ." Doc. 21 ¶ 61. Further, they allege that if "a fiduciary decides to use revenue sharing to pay for

---

[7] I also find defendant's plausibility arguments fail because, in contrast to defendant's position, the FAC cites the lack of RFPs and use of revenue sharing as pieces to allege a larger picture of overall Plan mismanagement. The FAC does not rely solely on RFPs or revenue sharing; instead, the FAC makes specific comparisons to similar plans, doc. 21 ¶¶ 88, 123, including defendant's formula for revenue sharing paid to Transamerica, *id.* ¶ 82, and calculated fees paid to Transamerica, *Id.* ¶ 78. Taken as a whole, the Court finds the FAC's allegations are plausibly pled.

recordkeeping, it is required that the fiduciary (1) determine and monitor the amount of the revenue sharing and any other sources of compensation that the provider has received, (2) compare that amount to the price that would be available on a flat per-participant basis, or other compensation models that are being used in the marketplace, and (3) ensure the plan pays a reasonable amount of compensation." *Id.* ¶ 63.

Regarding the fees charged by Transamerica, plaintiffs compare the Nemours 403(b) Plan to other plans with similar numbers of participants and assets under management for the year 2021. *Id.* ¶ 88. Plaintiffs use this comparison to allege that defendant's "failure to monitor and control recordkeeping compensation cost the Plan millions of dollars during the Class Period and constituted a breach of the duty of prudence." *Id.* ¶ 89. The FAC goes on to compare funds in the Plan to allegedly available lower cost share classes of the same fund. *Id.* ¶ 123. Plaintiffs use this comparison to allege that defendants "should have known of the existence and availability of lower-cost share classes and should have promptly transferred the Plan's investments in such funds to the least expensive share classes." *Id.* ¶ 125. Had defendants compared the expense ratios of the Plan to other less expensive options, plaintiffs allege, defendants would have "selected the less expensive, but identical share classes, available to the Plan." *Id.* ¶ 126. The Court finds it plausible that, taking the allegations in the FAC as true, had defendants compared the Plan rates to the comparator plans in the FAC they may have selected a less expensive but identical option for Plan participants.

16

Other courts have found similar allegations as those in Count II of the FAC to be plausible. *See Hughes*, 595 U.S. at 174 ("respondents allegedly failed to monitor and control the fees they paid for recordkeeping, resulting in unreasonably high costs to plan participants."); *Huang*, 2022 WL 93571, at *2; *Main v. Am. Airlines Inc.*, 248 F. Supp. 3d 786, 795 (N.D. Tex. 2017) (denying motion to dismiss a similar duty to monitor claim); *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 CIV. 9936 (LGS), 2016 WL 5957307, at *8 (S.D.N.Y. Oct. 13, 2016) (holding where plaintiffs sufficiently alleged fiduciary breach claims, "Defendants' argument regarding the failure-to-monitor claim fails."); *Coyne & Delany Co. v. Selman*; 98 F.3d 1457, 1466 (4th Cir. 1996) (recognizing duty to monitor claim under ERISA). In line with these authorities and the discussion above, I recommend that defendant's motion to dismiss Count II also be denied.

## Recommendation

I respectfully **recommend** that Defendant's Motion to Dismiss and Incorporated Memorandum of Law, doc. 28, be **denied**.

**Entered** in Jacksonville, Florida, on January 17, 2025.

LAURA LOTHMAN LAMBERT
United States Magistrate Judge

17

## Notice to the Parties

"Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id*. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Order (Doc. No. 3), No. 8:20-mc-100-SDM, entered October 29, 2020, at 6.

c:
The Honorable Brian J. Davis, United States District Judge
Brandon J. Hill, Esquire
Amanda E. Heystek, Esquire
Luis A. Cabassa, Esquire
Marc Reed Edelman, Esquire
Adam R. Carlisle, Esquire
Howard Shapiro, Esquire
Lindsay Dennis Swiger, Esquire
Lindsey H. Chopin, Esquire
Michael Edward Holzapfel, Esquire