### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | |
|---|---|
| JEANNA CANNAROZZO, NICOLE LOPEZ, and AMY IVORY, on behalf of The Nemours Foundation Section 403(B) Plan, themselves, and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE NEMOURS FOUNDATION, <br><br> Defendant. | Case No. 3:23-cv-0136-BJD-LLL |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT AGREEMENT**

Jeanna Cannarozzo, Nicole Lopez, and Amy Ivory ("Plaintiffs") on behalf of The Nemours Foundation Section 403(B) Plan ("Plan"), have entered into a Class Action Settlement Agreement (the "Settlement") which, subject to this Court's approval, would resolve all claims asserted in this ERISA lawsuit in exchange for a $2,275,000 cash payment.[1]

The proposed Settlement is fair, reasonable, adequate, and in the best interests of Settlement Class Members, who are current or former participants in

---

[1] All capitalized terms used in this Motion that are not otherwise defined shall have the meanings provided in the Settlement Agreement.

the Plans[2] during the Settlement Class Period (January 1, 2017, through December 31, 2025). Listed below are the supporting exhibits to this Motion along with the supporting exhibits to the Parties' settlement agreement:

| Name of Exhibit | Exhibit Label |
| --- | --- |
| Declaration of Brandon J. Hill | Exhibit 1 to Motion for Final Approval |
| Parties' Settlement Agreement | Exhibit 2 to Motion for Final Approval |
| Proposed Class Notice | Exhibit A to Settlement Agreement |
| Proposed Plan of Allocation | Exhibit B to Settlement Agreement |
| Proposed Preliminary Approval Order | Exhibit C to Settlement Agreement |
| Proposed Final Approval Order | Exhibit D to Settlement Agreement |
| Proposed CAFA Notice | Exhibit E to Settlement Agreement |

While the Defendant agrees with and supports the ultimate relief sought in Plaintiffs' Motion for Preliminary Approval of Settlement, Defendant does not agree with all Plaintiffs' averments stated in this pleading and the other pleadings filed in support of Plaintiffs' Motion for Preliminary Approval of Settlement.

The proposed Settlement provides an immediate benefit to the Settlement Class in the form of a large cash payment. The Settlement is the product of hard-fought litigation, which included substantial motion practice, a robust pre-suit administrative remedies process that involved the exchange of thousands of pages of substantive documents, the retention of knowledgeable and qualified expert

---

[2] Plan or Plans is defined in the Settlement Agreement as: "Plan" means The Nemours Foundation Section 403(B) Plan and The Pediatric Medical Services of Florida, Inc. 401(k) Plan.: § 1.30.

witnesses who performed ERISA prudence and loss analyses, and arm's length negotiations between experienced ERISA counsel on both sides.

In addition, the benefits of the Settlement must be considered in the context of the risk that further protracted litigation might lead to no recovery, or to a smaller recovery for Plaintiffs and the proposed Settlement Class. The Defendant mounted a vigorous defense at all stages of the litigation, and, but for the Settlement, would have continued to do so through all future stages of the litigation.

In evaluating the terms of the Settlement, Class Counsel have concluded that the benefits provided to the Settlement Class make the Settlement in the best interests of Settlement Class in light of, among other considerations: (1) the substantial monetary relief afforded to the Settlement Class; (2) the risks and uncertainties of complex litigation such as this action; (3) the expense and length of time necessary to prosecute this action through trial, and appeals; and (4) the desirability of consummating the Settlement to provide prompt, effective relief to the Settlement Class.

Moreover, the proposed Settlement requires the parties to retain an independent fiduciary before final approval by this Court of the proposed Settlement, who will act on behalf of the Plan in reviewing the Settlement for purposes of determining whether to authorize Plaintiffs' Released Claims on behalf of the Plans and the Settlement Class. (Ex. 1, Settlement Agreement § 2.1.) *See* Prohibited Transaction Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003). The

parties have selected Fiduciary Counselors Inc. to serve in this capacity. (Ex. 1, Settlement Agreement § 2.1) Fiduciary Counselors Inc. is a nationally-respected independent fiduciary who specializes in scrutinizing proposed ERISA settlements with an eye toward ensuring such settlements are fair and reasonable to plans and plan participants. This will provide another objective review to ensure the Settlement's fairness to the proposed Settlement Class here.

For these reasons, and as explained further below, Plaintiffs respectfully submit this Motion seeking entry of an Order that will (1) preliminarily approve the Settlement of the claims asserted in this action; (2) certify the proposed Settlement Class; (3) approve the form and manner of giving notice of the proposed Settlement and related matters to the Settlement Class; (4) appoint Class Counsel; and, (5) set a date for a hearing on final approval of the Settlement, the Plan of Allocation, and the motion for Attorneys' Fees and Costs. The proposed Preliminary Approval Order addressing each of these topics is included as Exhibit C to the Settlement filed herewith.

## I.    **BACKGROUND FACTS.**

### A.    **Pre-Suit Investigation.**

Before filing this case, Class Counsel conducted significant in-depth research and analysis into Plaintiffs' claims and the anticipated defenses of those claims. Class Counsel retained and worked with industry experts during the pre-suit investigation stage. Class Counsel also reviewed thousands of pages of publicly

available documents, reviewed Plaintiffs' Plan documents, and worked with Plaintiffs and expert witnesses to craft the Complaint that was eventually filed.

### B.    Exhaustion of Administrative Remedies

On April 6, 2023, Class Counsel (on behalf of Plaintiffs) sent a letter addressed to the "Plan Administrator" which requested certain Plan documents and submitted an administrative claim pursuant to the Plan's mandatory administrative claims review process.  During the course of the administrative remedies process, Defendant produced thousands of pages of documents relevant to Plaintiffs' claims, including (1) the Plan's committee charter; (2) investment policy statement, (3) plan document and summary plan description, (4) committee meeting minutes, (5) investment advisor reports, (6) recordkeeper reports, (7) Plaintiffs' account statements, among other documents.   Class Counsel carefully scrutinized all of the documents produced. During the administrative process the case was stayed. (ECF 13). The administrative review process finally came to an end on April 16, 2024, and the case stay was lifted on May 30, 2024. (ECF 17, 20.)

### C.    Amended Complaint and Motion Practice

On June 14, 2024, Plaintiffs filed their First Amended Complaint. (ECF 21.) Defendant filed its motion to dismiss on August 13, 2024. (ECF 27.) Plaintiffs filed their opposition to the motion to dismiss on August 30, 2024.  (ECF 53.) Defendant filed its reply on September 13, 2024. (ECF 35.) On January 17, 2025, Magistrate Judge Laura Lothman Lambert entered a Report and Recommendation ("R & R")

recommending the Court deny Defendant's motion to dismiss. (ECF 39.) Defendant filed an object to the R & R on January 31, 2025. (ECF 40.) Plaintiffs filed their opposition to Defendant's objection on February 15, 2024. (ECF 41.)

On March 26, 2025, the Court overruled Defendant's objection to the R & R and denied Defendant's motion to dismiss. (ECF 42.) Defendant filed its answer and affirmative defenses on April 9, 2025. (ECR 43.) The parties filed their case management report on May 27, 2025. (ECF 50.)

**D.    Settlement Negotiations and Mediation.**

Both Class Counsel and Defendant's counsel bring decades of hard-earned experience to the table—each having litigated numerous ERISA fiduciary-breach actions of similar complexity. The idea of settlement was broached not as an afterthought, but as a natural progression—shortly after the administrative review process drew to a close, well over a year ago. What followed were arduous, arm's-length negotiations.

Recognizing the gravity of the issues and the interests at stake, counsel for both sides agreed to convene in person in Los Angeles, California, with the distinguished Robert A. Meyer of JAMS presiding as mediator. Mr. Meyer is widely regarded as one of the nation's preeminent mediators in ERISA class action disputes—a reputation earned through years of impartial and insightful guidance.

On June 10, 2025, the parties engaged in a full-day mediation under Mr. Meyer's stewardship. The process was anything but perfunctory. Negotiations were exhaustive and conducted with candor, persistence, and a mutual

commitment to resolution. After many hours, the parties, with the mediator's assistance, succeeded in reaching a class-wide settlement, contingent on this Court's approval. This agreement reflects not just compromise, but the informed judgment of counsel steeped in ERISA law and guided by the best interests of the class. Following this all-day mediation with Mr. Meyer, the parties reached an agreement in principle, which ultimately culminated in the Settlement now submitted for the Court's review and approval.

### E.    The Settlement Agreement

#### 1.    Benefits to Class Members

The Settlement provides for a monetary payment of $2,275,000 as compensation to the Settlement Class. (*See* Ex. 1, Settlement Agreement § 1.24.) This "Gross Settlement Amount" will cover the independent fiduciary fees; settlement administration fees and costs; and any Class Counsel fees and costs approved by the Court. (*Id.* § 1.24, 2.1.3., 6.1.) The remaining "Net Settlement Amount" will be distributed to Settlement Class Members pursuant to the proposed Plan of Allocation. (*See id.,* Plan of Allocation, Exhibit B.)

For Class Members who have Plan accounts as of the date of the distribution of the Net Settlement Amount, the distribution will be made automatically pursuant to applicable Plan terms through their Plan accounts. No claim form is required. The Settlement Administrator shall promptly notify Class Counsel as to the date(s) and amounts(s) of said allocation(s) made to Class Members who are Current Participants. For Former Participants, their distributions will be made by

checks written to each Former Participant by the Settlement Administrator. No Settlement Class Member whose entitlement to payment pursuant to the Plan of Allocation would be otherwise less than Fifty dollars ($50) shall receive any payment. The Settlement Administrator shall be responsible for sending checks constituting their share of the Net Settlement Amount allocated to the Former Participants as provided by the Plan of Allocation, as well as complying with all tax laws, rules, and regulations with respect to Former Participants. No claim forms will be required of Former Participants either. (*Id.* § 5.3)

Under the terms of the Settlement, within thirty (30) days of the entry of the Preliminary Approval Order, Defendant shall pay $100,000 into the Qualified Settlement Fund to allow for payment of initial Administrative Expenses and Independent Fiduciary Expenses that may arise before the Court's entry of the Final Approval Order and Judgment. (*See* Exhibit A, Settlement Agreement § 4.4.) Within thirty (30) calendar days of the Effective Date of the Settlement Agreement, Defendants shall pay the remainder of the Gross Settlement Amount, $2,175,000 into the Qualified Settlement Fund. (*Id.* § 4.5.) The sum of these two payments, $2,275,000, shall constitute the "Gross Settlement Amount. (*Id.* § 1.24.)

The Settlement Fund will be administered by the Settlement Administrator, American Legal Claims Services, LLC. (*Id.* § 1.39.) The Net Settlement Amount shall be distributed to Settlement Class Members in accordance with the proposed Plan of Allocation (or as modified by the Court and agreed by the Parties). Any Net Settlement Amount remaining after the settlement distributions are made and all

Administrative Costs or applicable taxes have been paid, if any, shall be returned to the Plans forfeiture accounts to defray administrative fees and expenses of the Plans; there will be no *cy pres* payment or reversion to Defendant. (*Id.* § 5.3.)

### 2. <u>Retention of an Independent Fiduciary</u>

As required by Prohibited Transaction Class Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003), as amended 75 FR 33830 (June 15, 2010), the Settlement provides that Fiduciary Counselors, Inc., which has no relationship to any of the partes, will serve as an Independent Fiduciary to review the Settlement and provide, if the Independent Fiduciary concludes that it is appropriate, the authorization required by that Exemption on behalf of the Plan. (*Id.* § 2.) The Independent Fiduciary will provide a report to Class Counsel memorializing its determination prior to the final approval hearing set by this Court, and Class Counsel will file the report before the final fairness hearing. (*Id.* § 2.1.6.) Accordingly, in addition to this Court's review and approval, the Settlement will be evaluated by an experienced independent fiduciary whose sole loyalty is to the Plans, and that fiduciary will evaluate the Settlement as to whether it is (1) reasonable in the light of the litigation risk and the value of the claims, (2) consistent with an arm's length agreement, and (3) not part of an agreement or arrangement to benefit a party in interest.

### 3. <u>Attorneys' Fees and Costs</u>

Any Attorneys' fees and costs the Court may award will be paid from the Gross Settlement Fund. (*Id.* §§ 1.26, and 6.) Class Counsel will petition the Court

for an award of attorneys' fees not to exceed one-third (33.3%) of the Gross Settlement Amount, plus reasonable expenses. (*Id.*) The Settlement is not contingent on any such fees, costs, or compensation being awarded. (*Id.* § 13.4.) Thus, if the Court denies the petition for Attorneys' Fees and Costs, in whole or part, such denial will have <u>no impact</u> on the validity or enforceability of the Settlement. (*Id.*)

### 4.    **Release of Claims**

Under the terms of the Settlement, Plaintiffs and the Settlement Class Members, on their own behalf and on behalf of their current and former beneficiaries, their representatives, and their successors-in-interest, and the Plan absolutely and unconditionally release and forever discharge Defendants and the other Released Parties from all Released Claims, as set forth in more detail in Section 8 of the Settlement Agreement. (*Id.* §§ 1.34, 1.35, 3.14, 3.15, 3.16, 7.)

### 5.    **Notice and Objections**

Pursuant to Federal Rule of Civil Procedure 23(e)(1) and (e)(5), the Settlement provides for notice to the Class and an opportunity for Settlement Class Members to object to approval of the Settlement. The proposed form and method of notice of the proposed Settlement satisfy all due process considerations and meet the requirements under Rule 23(e)(1).

The proposed Settlement Notice is attached to the Settlement Agreement as Exhibit A. The Settlement Notice will fully apprise Settlement Class Members of the existence of the lawsuit, the Settlement, and information they need to make

informed decisions about their rights, including (1) the terms of the Settlement; (2) the nature and extent of the Released Claims and Released Parties; (3) the maximum attorneys' fees and expenses Class Counsel will seek; (4) the procedure and timing for objecting to the Settlement; (5) the date and place of the final fairness hearing; and (6) the website that will contain the settlement documents and other  information about the Settlement and the litigation.

The notice plan consists of the following steps:  First, the Settlement Notice will be sent by electronic means, and first-class mail, to all Settlement Class Members identified by the Settlement Administrator, using the last mailing address known to the Plans' recordkeepers. Second, the Settlement Administrator will provide a dynamic website that will provide the Settlement Class Members answers to frequently asked questions, court documents, and the ability to email the Settlement Administrator with questions. Third, the Settlement Administrator will provide an IVR call center, which Settlement Class members will be able to call toll-free 24 hours a day, 7 days a week. Fourth, the Settlement Administrator must take additional action to reach those Settlement Class Members whose notice letters are returned as undeliverable. Accordingly, both the form of notice and proposed procedures for notice satisfy the requirements of due process, and the Court should approve the notice plan as adequate.

## II.  THE PROPOSED SETTLEMENT IS WITHIN AN APPROPRIATE RANGE FOR PRELIMINARY APPROVAL

Rule 23(e) requires judicial approval of any settlement agreement that will bind absent class members. This involves a two-step process. *Smith v. Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832, at *5 (S.D. Fla. June 15, 2010); *Holman v. Student Loan Xpress. Inc.*, 2009 U.S. Dist. LEXIS 113491, at *7 (M.D. Fla. Nov. 19, 2009). "In the first step of the process, a court should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class." *Smith*, 2010 U.S. Dist. LEXIS at *5-6. Second, following preliminary approval of the settlement, class members are provided notice of a formal fairness hearing, at which time arguments and evidence may be presented in support of, or in opposition to, the settlement. *Id.* "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits."[3]

Under the first step of Rule 23(e)(2), Courts look to whether: (1) the class representative and class counsel have adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposed settlement treats class members equitably relative to each other. This standard is satisfied here, and the Court should enter an order Preliminarily Approving the Class Action Settlement Agreement.

---

[3] *Pierre-Val v. Buccaneers Ltd. Partn.*, 2015 U.S. Dist. LEXIS 81518 at *2-3 (M.D. Fla. June 17, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).

### 1.   The Class Representatives and Class Counsel Have Adequately Represented the Class

The proposed Class Representatives, Plaintiffs along with Class Counsel, adequately represent the class. This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.[4]

Here, the adequacy-of-representation requirement has been met. Plaintiffs are adequate given that their interests align fully with those of the Settlement Class. They have both actively participated in the case and have volunteered to assist Class Counsel with whatever is necessary to ensure this settlement is held together. There are no obvious conflicts of interest between either Plaintiffs and the Settlement Class. They, along with Class Counsel, secured a $2,275,000 monetary payment to resolve this matter .

With respect to Class Counsel, the proposed attorneys have extensive class action experience. They have a demonstrated track record of success and have recovered millions in class action court approved settlements, including in ERISA court approved class action settlements. (Hill Decl. ¶ 6.)

By way of illustration, in *Molla v. Gerdau Ameristeel US., Inc.*, No. 8:22-cv-02094-VMC (M.D. Fla. July 8, 2025), Middle District of Florida Judge Virginia M.

---

[4] *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Covington granted final approval of an ERISA class action settlement nearly identical to this case. Class counsel represented the *Molla* class members. Likewise, in *Rzepkoski v. Nova Southeastern University, Inc.*, No. 0:22-cv-61147-WPD (S.D. Fla. Mar. 13, 2025), Southern District of Florida Judge William P. Dimitrouleas granted final approval of a comparable ERISA class action settlement in which the undersigned also served as Class Counsel. The pattern continues: Judge Raag Singhal of the Southern District of Florida approved a similar ERISA class action settlement in *Angelo v. NCL Corporation LTD*, No. 22-cv-22962-AHS (S.D. Fla. Feb. 20, 2024), again with Class Counsel at the helm. So too in *Santiago v. University of Miami*, No. 1:20-cv-21784-DPG (S.D. Fla. Apr. 7, 2022), where Judge Darrin P. Gayles granted final approval in another ERISA class action prosecuted by Class Counsel. No court has ever questioned Class Counsel's qualifications or ability to serve. (Hill Decl. ¶ 7.)

Where, as here, the Plaintiffs are represented by counsel who have significant experience in class action litigation and a documented history of court approved class action settlements in class actions, including ERISA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of

the relative risks and benefits of protracted litigation are entitled to great deference"). In evaluating class action settlements, the "Court is entitled to rely upon the judgment of experienced counsel for the parties . . . [and] should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000) (same). For these reasons, both the Plaintiffs and Class Counsel satisfy Rule 23(e)(2)'s adequacy requirement.

### 2.   The Settlement Is the Product of Arm's Length Negotiations Between Experienced Counsel Before a Neutral Mediator

The proposed Settlement is the product of arm's length negotiations between the parties and their counsel. (Hill Decl. ¶¶ 25-26.) Thus, the next Rule 23(e)(2) factor is also satisfied.

The Settlement was achieved only after arm's length negotiations between well-informed and experienced counsel after consultations with industry experts, hard-fought motion practice, and a substantial exchange of discovery. To be sure, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation and are clearly capable of assessing the strengths and weaknesses of their respective positions. Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement ... counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

Counsel on both sides are experienced and thoroughly familiar with the factual and legal issues presented. It is recognized that the opinion of experienced and informed counsel supporting the settlement is entitled to considerable weight. *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1149 (11th Cir. 1983).

Besides being highly experienced, the parties and counsel were well-informed of the potential strengths and weaknesses of their positions and conducted good faith negotiations in an effort to avoid costly and protracted litigation. *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 00-2838, 2008 WL 11336122, at *8 (N.D. Ga. Oct. 20, 2008).

Additionally, the settlement was ultimately the result of a successful mediation before a class-action mediator, and several months of further negotiations thereafter.[5]

In sum, the attorneys who conducted the negotiations for the Settlement Class have years of experience in conducting complex class action litigation and were thoroughly conversant with the strengths and weaknesses of the case. Class Counsel's decision on settlement should be given great deference. This also weighs in favor of approval.[6]

---

[5] *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *see also George v. Acad. Mortgage Corp.*, 369 F. Supp. 3d 1356, 1369–70 (N.D. Ga. 2019)(:The parties settled this Action by mediation with an experienced mediator, Steven Pearl, which further confirms that the process was procedurally sound and not collusive.")

[6] *See Gevaerts v. TD Bank, N.A.,* No. 11:14-CV-20744-RLR, 2015 WL 12533121, at *7 (S.D. Fla. Aug. 4, 2015) ("Plaintiffs' counsel was also well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, as well as the appropriate basis upon which to settle them, as a result of similar class action cases Plaintiffs' counsel has brought in the past.").

### 3.    <u>The Settlement Provides Significant Relief to Class Members</u>

The Settlement will provide substantial relief to Settlement Class Members, satisfying the third Rule 23(e)(2) factor. In fact, the Settlement requires the Defendant to create a common fund of up to $2,275,000.00 for the benefit of the proposed Settlement Class. The $2,275,000.00 recovery falls well within the range of reasonableness in this case, as it is a substantial percentage of the estimated recovery Class Counsel estimate could be recovered if successful in litigating the case through trial (exclusive of attorneys' fees and costs). Class Counsel estimate a potential total monetary recovery of roughly $5,900,000 is possible. (*See* Hill Decl. ¶ 28.) The $2,275,000.00 monetary recovery represents about 39% of the potential monetary recovery. (*Id.*) This amount represents an excellent recovery for the Plan. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988).

Absent this Settlement, continued litigation would be complex and would require the investment of considerable resources by both parties and the Court. Liability is heavily contested, and both sides would face considerable risks should the litigation proceed. In contrast to the complexity, delay, risk, and expense of continued litigation, the proposed Settlement will produce certain, and substantial recovery for Settlement Class.

The Settlement is particularly beneficial to the Settlement Class in light of the risks posed by continued litigation, including the possibility of the Court ultimately finding no liability or the inability to prove losses. While Plaintiffs

believe that the claims asserted against the Defendant are meritorious, Plaintiffs
recognize that the Defendant strongly disagrees and that Plaintiffs' claims present
a number of substantial risks to establishing both liability and losses. There is no
certainty that Plaintiffs would have prevailed at trial, and again at the appellate
level.

Additionally, with respect to the primary question of liability, the Defendant
claims that it properly managed the Plan and had prudent processes in place to
evaluate the Plan's investments and recordkeeping and administrative fees. The
Defendant claims that its choices were within the range of choices made by other
similarly-situated plan fiduciaries at the time they were made. The Defendant also
contends that Plaintiffs overstated the potential losses they could recover at trial,
even assuming Plaintiffs could establish liability.

Notably, one similar ERISA breach of fiduciary duty case was recently tried
to verdict. The similar case illustrates the perils both parties face of continued
litigation. In *Sacerdote v. New York Univ.*, the parties held a trial over similar
claims that lasted eight days; included testimony from twenty fact witnesses, five
expert witnesses, and over 600 exhibits. Judge Katherine Forrest of the U.S.
District Court of the Southern District of New York ruled, in a 78-page decision,
that the Defendant did not breach its ERISA fiduciary duties. Plaintiff appealed.
The Second Circuit reversed, in part, Judge Forest and the parties in that case
continue to litigate with the prospect of another trial on the horizon, and
presumably more appeals thereafter. They have been litigating for nearly ten years

with no end in sight. *See, e.g., Sacerdote v. New York Univ.*, No. 16-cv-6284, 2024 WL 4227186 (S.D.N.Y. Sept. 18, 2024). As the case against NYU clearly illustrates, Plaintiffs faced a substantial risk that they could litigate this case for years, at significant expense, only to lose at trial and on appeal, recovering nothing for the class.

In sum, under the Settlement, the Settlement Class can quickly realize a substantial portion of their alleged losses and protections for the Plan going forward. The proposed Settlement is fair, reasonable, and adequate.

### 4. The Proposed Settlement Treats Class Members Equitably Relative to Each Other

The last Rule 23(e)(2) factor is satisfied because the Settlement treats Class Members equitably. Settlement Class Members with an active account in the Plan will receive automatic settlement payments made directly to their Plan account. And if any of these Settlement Class Members no longer have an active account at the time of payment, then they will receive their settlement payment by check.

### 5. The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed any relief to the Settlement Class, and might have resulted in no relief at all. Moreover, Defendant likely would have appealed any judgment entered against it, resulting in further expense and delay. Complex litigation like this "can occupy a court's docket for

years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *Wald v. Wolfson* (*In re U.S. Oil and Gas*), 967 F.2d 489, 493 (11th Cir. 1992). By entering into the Settlement now, Plaintiffs saved precious time and money, and avoided the risks associated with further litigation, trial, and appeals.

### F.    The Proposed Notices are Adequate, Appropriate, and Warranted

Finally, due process and Federal Rule of Civil Procedure 23(e) do not require that each Settlement Class Member receive settlement notice, but they do require that settlement notice be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175 (1974). As discussed above, the proposed form and method of Settlement Notice here satisfy all due process considerations and the requirements under Rule 23(e)(1).

### III.    CONCLUSION

The Court should grant Plaintiffs' Motion for Preliminary Approval of the Parties' Class Action Settlement. A Proposed Order is attached as Exhibit C to the Settlement Agreement.

### <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(G)</u>

Pursuant to M.D. Fla. Local Rule 3.01(g), counsel for Plaintiffs conferred with Defendant prior to filing this Motion.  Defendant does <u>not</u> oppose the relief sought in this Motion.

DATED this 11ᵗʰ day of August 2025

Respectfully submitted,

*/s/Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 37061
**LUIS A. CABASSA, P.A.**
Florida Bar Number: 0053643
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Telephone: 813-337-7992
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com

**MARC R. EDELMAN**
Florida Bar Number. 0096342
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: 813-577-4722
Email: MEdelman@forthepeople.com

**MICHAEL C. MCKAY**
Pro Hac Vice
**MCKAY LAW, LLC**
5635 N. Scottsdale Road, Suite 170
Scottsdale, Arizona 85258
Telephone: (480) 681-7000
Facsimile: (480) 348-3999
Email: mmckay@mckaylaw.us

*Attorneys for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 11, 2025, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system.

*/s/ Brandon J. Hill*
**BRANDON J. HILL**